**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: February 14 2020**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 17-33602 |
| | ) | |
| David L. Van Auken and | ) | Chapter 7 |
| Sharon L. Van Auken, | ) | |
| | ) | Adv. Pro. No. 18-03046 |
| Debtors. | ) | |
| | ) | Judge John P. Gustafson |
| Daniel M. McDermott, | ) | |
| United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| David L. Van Auken, | ) | |
| | ) | |
| Defendant. | | |

## <u>MEMORANDUM OF DECISION AND ORDER</u>

This Adversary Proceeding is before the court for decision after trial on Plaintiff Daniel M. McDermott, United States Trustee's ("UST") Complaint [Doc. #1] against Defendant David L.

Van Auken[1] ("Defendant-Debtor"). In the Complaint, Plaintiff seeks a denial of Defendant-Debtor's discharge under 11 U.S.C. §727(a)(2) and (a)(4). [Doc #1, pp. 11-14]. Specifically, the UST alleges that Defendant-Debtor's Schedules and Statement of Financial Affairs significantly understated or failed to disclose income related to Defendant-Debtor's home building business, Van Auken Homes LLC. The UST also alleges that Defendant-Debtor failed to disclose a transfer of real estate that occurred four months prior to his bankruptcy filing. In his Answer, Defendant-Debtor denies the UST's allegations, averring that the discrepancies at issue are not the result of Defendant-Debtor's fraud, but rather the result of the downturn in his home building business. Defendant-Debtor also asserts that the real estate transfer was made in the ordinary course of the home building business and thus did not need to be listed on the Statement of Financial Affairs.

The Court has jurisdiction over Defendant-Debtor's underlying Chapter 7 case and this adversary proceeding pursuant to 28 U.S.C. §§1334, 157(a), and Local General Order 2012–7 of the United States District Court for the Northern District of Ohio. Objection to discharge actions are core proceedings that this Court may hear and determine. 28 U.S.C. §157(b)(1) and (b)(2)(J).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined all the submitted materials, weighed the credibility of witnesses, considered all of the admitted evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Defendant-Debtor's discharge should be denied under §727(a)(4)(A).

## Findings of Fact

Defendant-Debtor David L. Van Auken and his wife, Joint-Debtor Sharon L. Van Auken, filed for Chapter 7 relief on November 17, 2017. [Case No. 17-33602, Doc. #1]. On Schedule I, Defendant-Debtor listed $2,000.00 in net monthly income from operating a business, $1,877.00 in income from Social Security, and $250.71 in pension or retirement income. [*Id.*, p. 36]. Joint-Debtor reported Social Security income of $736.00, leading to a combined monthly income of $4,863.71. [*Id.*]. Defendant-Debtor signed Official Form 106Dec, certifying, under the penalty

---

1/ On August 29, 2019, Joint-Debtor Sharon L. Van Auken was dismissed from this adversary proceeding on the UST's Motion. [Doc. #29].

of perjury, that he had read the summary and schedules and that they were true and correct. [*Id.*, p. 39].

On Question 4 of Part 2 of the Statement of Financial Affairs, Defendant-Debtor stated that he did not earn any income from employment or from operating a business during 2017, 2016, or 2015. [*Id.*, p. 40]. Similarly, on Question 5, Defendant-Debtor stated that he did not receive any other income during that same three-year period. [*Id.*]. On Question 18 of Part 7 of the Statement of Financial Affairs, Defendant-Debtor stated that, during the two-year leadup to his bankruptcy filing, he did not sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of business. [*Id.*, p. 44]. Defendant-Debtor declared under penalty of perjury that his answers on the Statement of Financial Affairs were true and correct. [*Id.*, p. 46].

On February 15, 2018, Creditors William Petryszyn and Cynthia Petryszyn filed a letter with the court detailing a dispute they had with Defendant-Debtor and his home building company, Van Auken Homes. [*Id.*, Doc. #27]. At a hearing held on February 26, 2018, the Petryszyns indicated that they intended their letter to serve as a formal legal complaint, initiating Adversary Proceeding 18-03020. Creditor Alan Taylor ("Mr. Taylor") filed a Motion for 2004 Exam on March 7, 2018, seeking documents related to Defendant-Debtor's home building business and its finances. [*Id.*, Doc. #39], which the court granted on March 26, 2018. [*Id.*, Doc. #50]. After numerous parties were given extensions of the deadline for the filing of complaints related to Defendant-Debtor's discharge [*Id.*, Doc. ##53, 55, 72, 82], the UST initiated this adversary proceeding on June 13, 2018 via the filing of a Complaint. [Doc. #1].

Service of the Complaint was executed on Defendant-Debtor on June 14, 2018 [Doc. #3] and an Answer was filed on July 16, 2018. [Doc. #4]. The UST and Defendant-Debtor subsequently filed their respective exhibit and witness lists in late December of 2018. [Doc. ##11, 13]. After the court granted two Motions to Continue [Doc. ##15, 18], the matter was set for trial on May 1, 2019. [Doc. #23].

At the May 1st trial, Defendant-Debtor, his counsel, counsel for the UST, UST Auditor Catherine Lowman ("Ms. Lowman"), and Mr. Taylor were in attendance. After the parties gave their opening statements, the UST called Ms. Lowman to the stand. Ms. Lowman described her review of Defendant-Debtor's Petition, Schedules, and Statement of Financial Affairs, testifying that she discovered inaccuracies when she compared those documents with pay advices, checking

account summaries, and other records detailing the finances of both Defendant-Debtor and his home building business, Van Auken Homes LLC.

Ms. Lowman subsequently identified Exhibit 6 as a collection of Van Auken Homes LLC checking account records, averring that she discovered numerous transactions that appeared to involve personal expenses, rather than expenses related to the operation of Van Auken Homes LLC. For example, Ms. Lowman identified payments related to groceries, home mortgage dues, vacations, and gambling, all from the Van Auken Homes LLC account. [Ex. 6, pp. 2, 8-11, 18, 26-29, 36-39, 47-51]. Based on her review, Ms. Lowman stated that these personal expense payments took place regularly throughout 2016. Ms. Lowman also identified numerous check and ATM cash withdrawals from the business account [*Id.*, p. 20, 23, 76], stating that those withdrawals appeared to relate to Defendant-Debtor's personal use because Van Auken Home LLC otherwise paid vendors using non-cash means. In his deposition, Defendant-Debtor admitted that the cash withdrawals from the Van Auken Homes LLC account were primarily for personal use. [Ex. 5, p. 29]

Ms. Lowman was then asked about Exhibit 7, which she identified as a summary of the non-business payments made from the Van Auken Homes LLC account during 2016. Exhibit 7 showed that, during 2016, a total of $92,715.19 in non-business expenses were paid from the Van Auken Homes LLC account, with a monthly average of $7,726.33. [Ex. 7, p. 4].

Turning to Exhibit 8, Ms. Lowman identified it as a collection of Van Auken Homes LLC's 2017 checking account records, noting that it showed a pattern similar to that in Exhibit 6, of personal expenses having been paid from the Van Auken Homes LLC account. [Ex. 8, pp. 2-4, 14-15, 23-27, 36-38, 46-49, 56-60]. Per Exhibit 9, a summary of the payments shown in Exhibit 8, $42,049.96 in non-business payments were made from the Van Auken Homes LLC account from January of 2017 through September of that year. [Ex. 9, p. 4].

Ms. Lowman was then asked about Defendant-Debtor's 2016 tax return, which she identified as Exhibit 10. Based on her comparison with the Van Auken Homes LLC account statements and summaries, Ms. Lowman stated that Defendant-Debtor's 2016 tax return appeared to have understated his income derived from his business by around $71,000.00. [Ex. 10, p. 3]. Ms. Lowman identified a similar discrepancy with regard to Defendant-Debtor's 2017 tax return, opining that it appeared to understate Defendant-Debtor's income from Van Auken Homes LLC by around $60,000.00. [Ex. 11, p. 4].

The UST then asked Ms. Lowman about Defendant-Debtor's answer to Question 18 on Part 7 of the Statement of Financial Affairs, which asks about transfers made during the two-year leadup to bankruptcy filing. According to her review of the case, Ms. Lowman testified that Defendant-Debtor failed to disclose the July 2017 transfer of two lots on Kelleys Island ("Kelleys Island Real Property"). Ms. Lowman stated that the UST only became aware of the Kelleys Island Real Property because the UST was contacted by a creditor of Defendant-Debtor.

On cross examination, Ms. Lowman admitted that Defendant-Debtor complied with the UST's document requests. Ms. Lowman opined that Defendant-Debtor's payment of personal expenses using the business account made it difficult to determine the financial health of Van Auken Homes LLC, though she admitted that there was nothing illegal about Defendant-Debtor's accounting practices. Ms. Lowman also admitted that she could not determine whether Van Auken Homes LLC paid subcontractors in cash. When asked about the UST's dispute with Defendant-Debtor, Ms. Lowman clarified that disclosure of Van Auken Homes LLC itself was not at issue. Instead, Ms. Lowman testified, the UST's contention was that Defendant-Debtor had failed to accurately disclose income derived from that business in his bankruptcy filings.

When asked about whether Defendant-Debtor may have made business hardware purchases alongside the purchase of groceries evidenced on the Van Auken Homes LLC's account statements, Ms. Lowman admitted that was it was a possibility. However, at a prior deposition, Defendant-Debtor had admitted that the payments made to the grocery store from the Van Auken Homes LLC account were for personal expenses. [Ex. 5, p. 32].

The UST then presented testimony from Mr. Taylor, who identified himself as a creditor of Defendant-Debtor. Mr. Taylor explained that, in 2017, he had hired Van Auken Homes LLC to build a home on Kelleys Island, a home that was never finished. Mr. Taylor testified that Defendant-Debtor repeatedly asked him for more money than had originally been agreed upon, and after being frustrated by the lack of progress around September or October of 2017, Mr. Taylor fired Defendant-Debtor from the project. Around that same time, Mr. Taylor initiated legal action to pursue Defendant-Debtor for the debt related to the failed homebuilding project.

On cross examination, Mr. Taylor admitted that his home building project on Kelleys Island remained incomplete as of May 2019, but explained that the delay was due to his loss of funds related to Defendant-Debtor's failure to complete the home building project.

The UST then called Defendant-Debtor to the stand. Defendant-Debtor stated that he

5

completed the Petition, Schedules, and Statement of Financial truthfully and accurately, but noted that he was under stress when he completed those documents. Defendant-Debtor testified that his wife was uninvolved with Van Auken Homes LLC and that he stopped operating under that entity upon filing for bankruptcy in November of 2017. When asked about the $2,000.00 a month figure listed on Schedule I, Defendant-Debtor explained it was a combination of income related to work done under Van Auken Homes LLC and a new LLC that was created around the time he filed for bankruptcy. Despite using the same $2,000.00 a month income figure on the Means Test [Doc. #1, p. 49], Defendant-Debtor testified that the $2,000.00 on Schedule I was an estimate of what he earned at the time he filed for bankruptcy.

When asked about how he managed the Van Auken Homes LLC bank account, Defendant-Debtor admitted that he regularly used that account to pay personal expenditures because the attorney who helped him create Van Auken Homes LLC advised him that doing so was legal. He also explained that he paid personal expenses from the business account because doing so was easier than first transferring those funds to a personal account. Defendant-Debtor testified that he determined which expenses were personal by comparing his checkbook with the tax records created by tax preparation software. While identifying whether various expenses evidenced by Exhibit 6 were personal or business, Defendant-Debtor repeatedly referred to the Van Auken Homes LLC account as "his account." When asked by the UST, Defendant-Debtor was able to identify numerous expenses on Exhibit 6 as personal expenses. Defendant-Debtor also explained that the check and ATM withdrawals from the business account were made so that he could have cash on hand in order to pay both personal and business expenses.

Turning to Question 4 of Part 2 of the Statement of Financial Affairs, which asks whether the debtor had any income from employment or operating a business during this year or the two prior calendar years, Defendant-Debtor testified that he checked "no" because he thought the question was asking about secondary employment, not his primary means of earning an income. Defendant-Debtor also testified that, since he listed Van Auken Homes LLC on the Petition itself [Case No. 17-33602, p. 2], he did not believe he needed to list income earned from that business on the Statement of Financial Affairs.

The UST then asked Defendant-Debtor why he answered "no" to Question 18 of Part 7 of the Statement of Financial Affairs, despite having transferred the Kelleys Island Real Estate four months before filing for bankruptcy. Defendant-Debtor explained that he answered no because

6

he thought that the Kelleys Island Real Estate transfer occurred in the ordinary course of his home building business.

When asked about how he managed Van Auken Homes LLC's finances, Defendant-Debtor testified that he put all of the payments he received from customers/clients into one account, and then drew on that account as necessary. Defendant-Debtor stated that he had been managing his business finances that way for 30 years, and had built 300 homes during that time.

After closing arguments, Exhibits 3 through 15 and 18 through 20 were admitted into evidence without objection. [Doc. #27]. As of the date of this Memorandum of Decision, Defendant-Debtor has not amended or otherwise made any corrections to his Petition, Schedules, or Statement of Financial Affairs.

<u>**Conclusions of Law**</u>

**I. Denial of Discharge under §727**

Denial or revocation of a debtor's discharge are extraordinary remedies that run contrary to the Bankruptcy Code's "fresh start" policy. *Smith v. Jordan (In re Jordan)*, 521 F.3d 430, 433 (4th Cir. 2008); *Yoppolo v. Sayre (In re Sayre)*, 321 B.R. 424, 426–27 (Bankr. N.D. Ohio 2004). A bankruptcy discharge is considered the heart of the Bankruptcy Code's "fresh start" policy. *Sayre*, 321 B.R. at 427. Thus, the statutory exceptions to discharge are generally to be strictly construed in favor of the debtor. *United States v. Storey*, 640 F. 3d 739, 743 (6th Cir. 2011); *Smith v. Jordan (In re Jordan)*, 521 F.3d 430, 433 (4th Cir. 2008). However,

> the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "the successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

*Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987)(citations omitted); *U.S. Trustee v. Halishak* (*In re Halishak*), 337 B.R. 620, 630 (Bankr. N.D. Ohio 2005).

As the party seeking denial of Defendant-Debtor's discharge, the UST bears the burden of proof, *see*, Fed. R. Bankr. P. 4005, by a preponderance of the evidence. *McDermott v. Davis (In*

*re Davis*), 538 B.R. 368, 384 (Bankr. S.D. Ohio 2015); *see*, *Sayre*, 321 B.R. at 428.

The UST seeks to have Defendant-Debtor's discharge denied under 11 U.S.C. §727(a)(2) and (a)(4)(A). However, because the court finds that the UST prevails on his §727(a)(4)(A) claims, the court will not address the claim brought under §727(a)(2).

## II.  11 U.S.C. §727(a)(4)(A)

A prerequisite to the privilege of obtaining a discharge in bankruptcy is complete financial disclosure. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000). Thus, under §727(a)(4)(A), a debtor will be denied a discharge if "the debtor knowingly and fraudulently, in or in connection with the case...made a false oath or account[.]"  In order to prevail on a claim brought under §727(a)(4)(A), a plaintiff must prove, by a preponderance of the evidence that:

> 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.

*Keeney*, 227 F.3d at 685.

The Sixth Circuit explained fraudulent intent as contemplated under this section as follows:

> [I]ntent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir.1998).  A reckless disregard as to whether a representation is true will also satisfy the intent requirement. *See Id.* "'[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case.'" *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir.1987) (citation omitted).  However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence.

*Id.* at 685-86; *see also, Gandy v. Schuchardt* (*In re Gandy*), 645 Fed.Appx. 348 (6th Cir. 2016).

Because "[d]ebtors rarely admit to making a statement with fraudulent intent,…courts must use circumstantial evidence and the debtor's conduct to infer the requisite state of mind." *In re Capra*, 2016 WL 5106994 at *7, 2916 Bankr. LEXIS 3410 at *19 (Bankr. N.D. Ohio September 19, 2016)(citing *Stevenson v. Cutler* (*In re Cutler*), 291 B.R. 718, 726 (Bankr. E.D. Mich. 2003)(further citations omitted)).  While false statements that are the result of ignorance or mere carelessness are not sufficient for purposes of establishing fraudulent intent, "[a] series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive." *Cutler*, 291 B.R. at 726 (citing *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174,

8

178 (5th Cir. 1992)). Additionally, "a series of innocent mistakes which evidence a pattern of reckless and cavalier disregard for the truth" can give rise to a finding of fraudulent intent as required under §727(a)(4)(A). *Becker v. McInerney (In re McInerney)*, 509 B.R. 109, 115 (Bankr. E.D. Mich. 2014)(citation omitted); *see also*, *Beaubouf*, 966 F.2d at 178; *Tully*, 818 F.2d at 112; *Cutler*, 291 B.R. at 726.

A false oath is material if it "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Keeney*, 227 F.3d at 686 (quoting *Beaubouef*, 966 F.2d at 178); *see*, *Gandy*, 645 Fed.Appx. at 354. Given that broad ambit, the threshold for materiality is relatively low. *Premier Capital, LLC v Crawford (In re Crawford)*, 841 F.3d 1, 8 (1st Cir. 2016); *In re Sears*, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000).

"The fundamental purpose of §727(a)(4)(A) is to ensure that the trustee and creditors have accurate information without having to do costly investigations." *U.S. Trustee v. Zhang (In re Zhang)*, 463 B.R. 66, 86 (Bankr. S.D. Ohio 2012); *see also, Tully*, 818 F.2d at 110 (1st Cir. 1987) ("Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight."). A bankruptcy trustee has neither the time nor the resources to conduct an in-depth review of each and every debtor, necessitating accurate initial disclosures as a key feature of the U.S. bankruptcy system. *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 230 (E.D.N.Y. 2000); *Roudebush v. Sharp (In re Sharp)*, 244 B.R. 889, 891–92 (Bankr. E.D. Mich. 2000).

Statements in bankruptcy schedules and at 341 meetings are given under penalty of perjury. *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (6th Cir. BAP 1999); *Ayers v. Babb (In re Babb)*, 358 B.R. 343, 355 (Bankr. E.D.Tenn. 2006); *Zhang*, 463 B.R. at 86. Statements made during Rule 2004 examination are also made under oath. *Noland v. Johnson (In re Johnson)*, 387 B.R. 728, 743 (Bankr. S.D. Ohio 2008); *Babb*, 358 B.R. at 355. Thus, any false statement made by the debtor in the debtor's schedules, at a creditors' meeting held pursuant to §341, or during a 2004 examination or deposition relating to the debtor's assets and financial circumstances, could potentially lead to denial of a debtor's discharge under §727(a)(4)(A).

The court will address each of the five *Keeney* elements in turn.

The first *Keeney* element, which looks to whether the statements at issue are made under oath, is met here because the UST's Complaint focuses on various statements contained in

Defendant-Debtor's Schedules and Statement of Financial Affairs, all of which are submitted under oath and the penalty of perjury. *See*, *Hamo*, 233 B.R. at 725. Thus, the court finds that the UST has met his burden as to the first *Keeney* element.

The UST has also met his burden as to the second *Keeney* element because the evidence introduced at trial established that Defendant-Debtor's reported income on Schedule I was inaccurate and that his answers on the Statement of Financial Affairs were false. Both Defendant-Debtor's testimony and the financial documents introduced by the UST demonstrated that Defendant-Debtor earned significantly more than the Schedule I figure of $2,000.00 a month, largely in personal expenses paid from the Van Auken Homes LLC account. [Ex. 7, p. 4; Ex. 9, p. 4]; *see*, *In re Sgambati*, 584 B.R. 865, 878 (Bankr. E.D. Wisc. 2018)("In itself, using a business account to pay personal expenses is not a basis to deny a Chapter 7 debtor his discharge. But falsely underreporting the amount of business funds used for personal expenses will support a claim under §727(a)(4)(A).")(citations omitted).

Further, despite Defendant-Debtor answering "no" to questions on the Statement of Financial Affairs regarding income earned and transfers made during the leadup to his bankruptcy filing, the UST showed that Defendant-Debtor had actually earned a significant amount of unreported income during 2015, 2016, and 2017. [*Id.*]. The UST also proved that Defendant-Debtor sold the Kelleys Island Real Property about four months before filing for bankruptcy and that those real estate sales were not made in the ordinary course of Defendant-Debtor's business.[2] Thus, the court finds that the second *Keeney* element is met here.

As for the third *Keeney* element, which asks whether Defendant-Debtor knew his statements were false, and the fourth *Keeney* element, which asks whether Defendant-Debtor made false statements with fraudulent intent, the court finds that the UST has met his burden. The evidence presented at trial showed that Defendant-Debtor routinely commingled his personal and business finances such that the income figures he provided on his sworn bankruptcy documents exhibited a pattern of inaccuracy. Thus, the court finds that the numerous false statements on

---

2/ Defendant-Debtor's argument that he did not disclose the transfer of the Kelleys Island Real Property because it occurred in the ordinary course of Van Auken Homes LLC's business is belied by the fact that, in his Answer, Defendant-Debtor averred that he transferred the real estate because "the business was failing and needed capital." [Doc. # 4, p. 4]. Defendant-Debtor also gave testimony that the Kelleys Island Real Property transfer occurred as a last-ditch effort to save his failing home building business. That the transfer was made to raise capital in pursuit of staving off failure appears irreconcilable with the notion that the transfer was made in the ordinary course for purposes of disclosure on the Statement of Financial Affairs.

Defendant-Debtor's Schedule I and Statement of Financial Affairs give rise to an inference that Defendant-Debtor knew those statements were false and intended to deceive when he made them. *See*, *Cutler*, 291 B.R. at 726 ("The numerous false statements in this case give rise to an inference of an intent to deceive."); *see also*, *McInerney*, 509 B.R. at 115.

Even if the court were to credit Defendant-Debtor's explanation[3] that he did not intend to deceive when he asserted an artificially low income on the documents he submitted under penalty of perjury, the court finds that Defendant-Debtor's incautious accounting practices should not inoculate him from the consequences of his reckless misstatements. *See*, *Capra*, 2016 WL 5106994 at *7, 2916 Bankr. LEXIS 3410 at *19 ("A false statement made without adequate care for its accuracy may be sufficiently reckless to justify denial of discharge."). In other words, the bar for obtaining a discharge should not be lowered for a debtor who has a history of commingling personal and business funds, particularly when many of that debtor's creditors are pursuing debts resulting from, at least in part, those same inadequate accounting practices.

A look towards the decision in *Zhang* further supports a finding that Defendant-Debtor's failure to disclose personal expenses paid from his business account violated §727(a)(4)(A). In *Zhang*, the court held that the debtor's failure to schedule a business bank account constituted a violation of §727(a)(4)(A) because the debtor used funds from that account to pay personal expenses. 463 B.R. at 87. Noting that the debtor failed to give a legitimate business reason for his personal use of that account, the court held that the debtor "knew these were his personal funds and maintained those funds in the [business] accounts to keep them from his creditors and bankruptcy trustee." *Id.* Thus, the *Zhang* court found that the debtor's discharge ought be denied under §727(a)(4)(A). *Id.*

While the case at hand deals with undisclosed funds and transfers rather than accounts, the *Zhang* court's reasoning applies to the facts of this case. The evidence presented at trial showed that Defendant-Debtor used the Van Auken Homes LLC account to pay various personal expenses unrelated to the workings of the home building business, payments that were not disclosed on

---

3/ Defendant-Debtor attempted to explain away his failure to list income from Van Auken Homes LLC on the Statement of Financial Affairs by asserting that he believed Question 4 of Part 2 was asking for "other" income, not income derived from his primary business. Defendant-Debtor also stated that he believed that listing his business on the Petition meant that he did not need to list income derived from that business on the Statement of Financial Affairs. Based on the plain meaning of "Did you have any income from employment or from operating a business during this year or the two previous calendar years," the court finds these explanations unpersuasive.

Defendant-Debtor's sworn bankruptcy documents. And these were not one-off or isolated occurrences. Instead, Defendant-Debtor's testimony revealed that he regularly used the Van Auken Homes LLC account to pay personal expenses because he believed it was legal to do so.[4] Defendant-Debtor further explained that paying personal expenses using the business account was easier than transferring the funds to a non-business account before using them for personal expenses. Thus, Defendant-Debtor's testimony established that he knew he was paying personal expenses when he drew on the business account, contradicting his assertion that he genuinely believed he did not need to include those figures when setting forth his income on sworn documents.[5]

The court also finds that Defendant-Debtor's failure to list the transfer of the Kelleys Island Real Property on the Statement of Financial Affairs satisfies the *Keeney* intent elements. Much like the payment of personal expenses from the Van Auken Homes LLC account described above, Defendant-Debtor conducted the transfer of the Kelley's Island Real Property in a manner that conflated business and personal use. Despite Defendant-Debtor stating that the transfer was made solely as an attempt at raising business-saving capital – a statement that undermines the notion that the transfer was made in the ordinary course – the real property was titled in Defendant-Debtor and his wife's names before the transfer occurred.[6] [Ex. 19, p. 1]. Further, the fact that the proceeds were deposited into the Van Auken Homes LLC account is of little help to Defendant-Debtor's position given his routine use of that account for personal expenses. In sum, Defendant-Debtor's argument that he did not believe he needed to list the transfer is unpersuasive because he regularly used Van Auken Homes LLC to conduct personal business, putting him on notice that he would need to disclose that transfer when asked about transfers. His failure to list the Kelleys

---

4/  The legality of Defendant-Debtor's accounting practices is irrelevant with regard to his duty to disclose income on sworn bankruptcy documents, a duty he did not fulfill in this case.

5/  Defendant-Debtor's credibility is further undermined by the discrepancy between his testimony at trial and his use of the $2,000.00 income estimate on the Means Test. Despite testifying that the $2,000.00 on Schedule I represented his income as of the date of filing, he also provided that same number when filling out the Means Test, which is calculated by averaging monthly income using a 6 month lookback period. [Doc. #1, p. 49]. The evidence presented by the UST showed a higher monthly income figure once the payment of personal expenses was included.

6/  In fact, the original deed of conveyance introduced by the UST and authenticated by Defendant-Debtor [Ex. 18] showed that the Kelleys Island Real Property had been conveyed as an estate by the entireties with right of survivorship to Defendant-Debtor and his wife back in 1988, further under cutting his arguments that the 2017 transfer of that property related solely to his home building business and that it was was made in the ordinary course. Defendant-Debtor also admitted that, back in 1988, those lots were purchased for personal use.

12

Island Real Property transfer was thus either an intentional misstatement or one made with a reckless disregard for its truth. In either case, the court finds that it warrants a denial of Defendant-Debtor's discharge under §727(a)(4)(A).

Accordingly, the court finds that the third and fourth *Keeney* elements have been met as to both the income and transfer misstatements on Defendant-Debtor's Schedules and Statement of Financial Affairs.[7]

Lastly, the court finds that Defendant-Debtor's false statements regarding his income and the Kelley's Island Real Property transfer were materially related to his Chapter 7 case, satisfying the fifth *Keeney* element. The UST established that Defendant-Debtor failed to disclose a multitude of personal expenses paid from his business account, omissions that rendered his Schedule I and Statement of Financial Affairs inaccurate. Further, the undisclosed transfer of real estate netted Defendant-Debtor and his business over $26,000.00 [Ex. 19, p. 3], a sum that is unquestionably material in the context of Defendant-Debtor's financial circumstances. Thus, because Defendant-Debtor's false oaths concerned "the discovery of assets, business dealings, [and] the existence and disposition of his property," the court finds that the UST has carried his burden as to the fifth *Keeney* element.

## IV. Conclusion

The Bankruptcy Code requires that debtors provide reliable information that gives interested parties an accurate description of the financial circumstances of those seeking a discharge of their debts. *See*, *Zhang*, 463 B.R. at 86; *Tully*, 818 F.2d at 110. Here, the UST's investigation revealed that the statements on Defendant-Debtor's Petition and Schedules regarding his income and financial interests in his homebuilding business failed to meet that minimum threshold of reliability. Further, the evidence presented at trial showed that even if Defendant-Debtor did not "intend" to make fraudulent statements, he acted recklessly with regard to their veracity in lockstep with his inattentive accounting practices, undermining the accuracy of the information that the bankruptcy process relies upon. Thus, the court finds that, due to those false statements submitted under penalty of perjury, Defendant-Debtor's discharge should be denied

---

7/ The court notes that Defendant-Debtor has not amended or otherwise attempted to correct the false statements contained in his Schedule I and Statement of Financial Affairs, bolstering the court's conclusion that those statements were not made inadvertently or the result of an innocent mistake. *See*, *O'Neal v. DePriest* (*In re DePriest*), 414 B.R. 518, 525 (Bankr. W.D. Mo. 2009)(finding that a debtor's failure to amend his schedules, after having numerous opportunities to do so, supported a finding that his omissions were not inadvertent).

under §727(a)(4)(A).

THEREFORE, for the foregoing reasons, good cause appearing,

IT IS ORDERED that Defendant-Debtor David L. Van Auken's discharge be DENIED under 11 U.S.C. §727(a)(4)(A). A separate entry of Judgment will be entered by the court contemporaneously with this Memorandum.